IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

MARY DICKSON,
*Personal Representative of the*
*Estate of* VADA MAE SMITH, *deceased,*

        Plaintiff,

v.                CIVIL ACTION NO. 2:15-cv-02800

ETHICON INC., ET AL.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

   Pending before the court is a Motion to Strike the Affidavit and Autopsy Report of George R. Nichols II, M.D. [ECF No. 104]; a Motion for Summary Judgment [ECF No. 109]; and a Motion to Exclude the Opinions of George Nichols II, M.D. [ECF No. 112], all of which were filed by the defendants, Ethicon Inc. and Johnson & Johnson ("Defendants"). The Motions are now ripe. For the reasons that follow, I **GRANT** Defendants' Motion for Summary Judgment [ECF No. 109]. I further **DENY AS MOOT** Defendants' Motions regarding Dr. Nichols [ECF Nos. 104 and 112].

  **I.**  **Background**

   In this case, the plaintiff is the daughter and personal representative of the estate of Vada Mae Smith, who was implanted with a TVT for the treatment of stress urinary incontinence on August 17, 2001. Am. Short Form Compl. [ECF No. 12] ¶¶ 9, 10. Ms. Smith filed suit against the defendants in 2015. She subsequently passed away on September 13, 2016. On August 8, 2017, this court entered an Order identifying Ms. Dickson as the Personal Representative of the Estate

of Vada Mae Smith, and granting Ms. Dickson's motion to substitute for Ms. Smith as the plaintiff in this case. This case resides in MDL No. 2327, one of the seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI").

The plaintiff has been proceeding in this matter *pro se* since April of 2018. I recognize the difficulty of navigating multi-district litigation regarding products liability *pro se*. But *pro se* plaintiffs must still observe scheduling orders and rules for discovery, as well as provide sufficient evidence for their claims. This court specifically cautioned Ms. Dickson about proceeding *pro se*, stating that the court, "expects *pro se* litigants to comply with the same time requirements, scheduling orders, and other procedural rules required by counsel of record to observe, including the Local Rules, the Federal Rules of Civil Procedure, and each of the Pretrial Orders entered in this case" and that "failure to comply with all court orders and deadlines may result in the imposition of monetary sanctions, as well as the dismissal of… [her] case with prejudice." [ECF No. 52]. Moreover, this court has afforded the plaintiff considerable flexibility throughout this litigation, including granting multiple stays to give her more time to seek counsel, and granting leave for the plaintiff to amend her complaint after the scheduling order had been entered.

The plaintiff initially alleged the following claims against Defendants in her Amended Short Form Complaint: negligence (Count I); strict liability – manufacturing defect (Count II); strict liability – failure to warn (Count III); strict liability – defective product (Count IV); strict liability – design defect (Count V); common law fraud (Count VI); fraudulent concealment (Count VII); constructive fraud (Count VIII); negligent misrepresentation (Count IX); negligent infliction of emotional distress (Count X); breach of express warranty (Count XI); breach of implied warranty (Count XII); violation of consumer protection laws (Count XIII); gross negligence

(Count XIV); unjust enrichment (Count XV); punitive damages (Count XVII); and discovery rule and tolling (Count XVIII). Am. Short Form Compl. [ECF No. 12] ¶13. On December 17, 2019, the plaintiff filed a Second Amended Short Form Complaint, adding two new counts: (a) "illegal, adulterated, and misbranded device;" and (b) wrongful death. Second Am. Short Form Compl. [ECF No. 85].

In her Second Amended Short Form Complaint, the plaintiff alleged, for the first time, that Ms. Smith was implanted with both a TVT device *and* a TVT-Obturator device ("TVT-O"). [ECF No. 85]. The plaintiff alleged that the TVT-O device was implanted on September 27, 2006, at Greenbrier Valley Medical Center, Lewisburg, WV. Given the limited purpose of the leave to amend and the advanced stage of litigation of the case, I previously held that the new allegations regarding TVT-O applied only to the two new counts: (a) "illegal, adulterated, and misbranded device;" and (b) wrongful death. [ECF No. 96].

On March 27, 2020, I granted Summary Judgment in favor of Defendants or otherwise dismissed all of the plaintiff's substantive claims with the exception of her claim for wrongful death. [ECF No. 96]. That same day, I entered a new scheduling order to allow time for discovery on that claim. [ECF No. 97]. Now that discovery is complete, Defendants move to exclude all opinions, including an affidavit and autopsy report, from Dr. Nichols. Defendants additionally move for Summary Judgment. For the reasons that follow, I **GRANT** the motion for Summary Judgment [ECF No. 109] without deciding whether Dr. Nichols' opinions and reports should be excluded.

3

## II.     Legal Standard

### A. Summary Judgment

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

The nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict" in his or her favor. *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997).

### B. Choice of Law

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL cases such as this. The choice of law for these pretrial motions depends on whether they involve federal or state law. In cases based on diversity jurisdiction, the choice-of-law rules to be used are those

of the states where the actions were originally filed. *See In re Air Disaster at Ramstein Air Base, Ger.*, 81 F.3d 570, 576 (5th Cir.1996) ("Where a transferee court presides over several diversity actions consolidated under the multidistrict rules, the choice of law rules of each jurisdiction in which the transferred actions were originally filed must be applied."); *In re Air Crash Disaster Near Chi., Ill.*, 644 F.2d 594, 610 (7th Cir.1981); *Carlson v. Bos. Sci. Corp.*, No. 2:13-CV-05475, 2015 WL 1956354, at *2 (S.D.W. Va. Apr. 29, 2015). *In re Digitek Prods. Liab. Litig.*, MDL No. 2:08–md–01968, 2010 WL 2102330, at *7 (S.D.W.Va. May 25, 2010).

If a plaintiff files her claim directly into the MDL in the Southern District of West Virginia, which is the case here, I consult the choice-of-law rules of the state in which the implantation surgery took place. *See Sanchez v. Boston Scientific Corp.*, 2:12–cv–05762, 2014 WL 202787, at *4 (S.D.W.Va. Jan. 17, 2014) ("For cases that originate elsewhere and are directly filed into the MDL, I will follow the better-reasoned authority that applies the choice-of-law rules of the originating jurisdiction, which in our case is the state in which the plaintiff was implanted with the product.").

In the remaining wrongful death claim, the plaintiff claims that both the TVT and TVT-O caused Ms. Smith's death. Ms. Smith's TVT implantation surgery took place in Virginia. Thus, I have previously held that Virginia's choice-of-law principles apply and that, using those principles, Virginia law applies to the plaintiff's claims regarding the TVT. [ECF No. 96].

Because this is the first time the plaintiff has made a claim regarding the TVT-O device, I have not considered what choice-of-law principles apply or, therefore, what substantive law applies to the TVT-O claim. The plaintiff alleges Ms. Smith was implanted with the TVT-O device at Greenbrier Valley Medical Center in Lewisburg, West Virginia. Therefore, I consider West Virginia's choice-of-law principles. "Traditionally, West Virginia courts apply the lex loci delecti

choice-of-law rule; that is, the substantive rights between the parties are determined by the law of the place of injury." *McKinney v. Fairchild Intern., Inc.*, 487 S.E.2d 913, 922 (W. Va. 1997). Because the place of injury is where the implantation surgery took place, I find that West Virginia substantive law applies to the plaintiff's wrongful death claim insofar as it relates to the TVT-O device.

### III. Analysis

Defendants put forth several arguments in support of their motion for summary judgment on the plaintiff's wrongful death claim. Relevant here is Defendants' argument that, even considering the materials and testimony Dr. Nichols intends to provide as the plaintiff's sole expert, the plaintiff cannot establish causation.

Because the plaintiff contends that both the TVT and TVT-O devices caused Ms. Smith's death, I consider the substantive law of both Virginia and West Virginia. Regarding the TVT, in Virginia, "[t]o recover in a wrongful death action, a plaintiff must show that the defendant was negligent, and that the defendant's negligence was the proximate cause of the decedent's death." *Darlington v. Harbour East Village LLC*, 2020 WL 3979664, at *4 (E. D. Va. July 14, 2020) (citing *Bowers v. Bristol Gas & Elec. Co.*, 42 S.E. 296, 297 (Va. 1902)). And, as I have previously explained, "Under any theory of tortious injury, one requisite element of a claim is a causal connection between defendant's conduct and a plaintiff's injury." *Hartwell v. Danek Medical, Inc.*, 47 F. Supp. 2d 703, 707 (W.D. Va. 1999). Similarly, under West Virginia law, "[t]o maintain an action for wrongful death, a beneficiary must show two specific elements: that a person has died,

6

and that the death was caused by a wrongful act, neglect or default." *Bradshaw v. Soulsby*, 558 S.E.2d 681, 687 (W. Va. 2001).

Both Virginia and West Virginia law require expert testimony to establish causation in cases involving issues that are medically complex and outside common knowledge and lay experience. *See In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig. (No II) MDL 2502*, 892 F.3d 624, 645–46 (4th Cir. 2018); *see also In re Lipitor Mktg., Sales Practices & Prod. Liab. Litig.*, 227 F. Supp. 3d 452, 469–77 (D.S.C. 2017) (surveying all States and U.S. territories and determining that "[w]hile the specific language used by the courts vary to some degree, all jurisdictions require expert testimony . . .where the issues are medically complex and outside common knowledge and lay experience."). In *In re Lipitor*, the court distinguished injuries whose proximate cause was within common knowledge—such as a "gunshot wound to the head of an otherwise healthy person who died shortly thereafter"—from injuries that required an expert to determine proximate cause—such as diabetes. 892 F.3d at 645–46.

Here, Defendants argue the plaintiff has failed to put forward the necessary expert testimony to show that either the TVT or TVT-O caused Ms. Smith's death. I agree. As noted above, the plaintiff's sole identified expert in this case is Dr. Nichols. Even assuming the plaintiff met the disclosure requirements of Federal Rule of Civil Procedure 26(a)(2), and that Dr. Nichols testimony would be otherwise admissible, it is insufficient to establish that either the TVT or TVT-O caused Ms. Smith's death. Specifically, during his deposition, Dr. Nichols testified as follows:

> Q. Doctor, . . . It's my understanding of your opinion in this case that you're going to testify that Ms. Smith died from complications related to inflammation and scarring in her pelvis, correct?
>
> A. Yes.

7

> Q. Now, you are not going to be offering an opinion as to what the cause of that inflammation and scarring is, correct?
>
> A. Yes.
>
> . . .
>
> Q. You're not going to be offering any testimony that the TVT or TVTO caused any specific injury to Ms. Smith, correct?
>
> A. Correct.
>
> Q. And you're not going to be offering any opinion to a reasonable degree of medical probability or certainty that the TVT or TVTO played a role in her death, correct?
>
> A. Correct.
>
> Q. So basically what you'll be testifying about in this trial will be that she had pelvic scarring and that pelvic scarring caused her to have additional complications, correct?
>
> A. Yes.
>
> Q. But you will not be telling the jury what caused her pelvic scarring, correct?
>
> A. Other than multiple pelvic surgical procedures, correct.

[ECF No. 109-6, at 6].

This testimony makes clear that Dr. Nichols will not provide the necessary testimony to permit plaintiff to establish causation under either Virginia or West Virginia law. In her response, the plaintiff argues that Dr. Nichols "doesn't have to name Defendants [sic] Products, [sic] to determine their polypropylene product/products contributed to the death." [ECF No. 111, at 1]. Instead, the plaintiff argues that it is enough for her to establish that Ms. Smith was implanted with both the TVT and TVT-O. *See id.* As I have previously explained, the absence of qualified expert testimony in this case would allow the fact finder to engage in impermissible post hoc reasoning— "the plaintiff did not suffer injuries; the plaintiff received the implant of TVT [and TVT-O]; the

plaintiff then began to suffer injuries and subsequently died ergo" the death was caused by the TVT and/or TVT-O. [ECF No. 96]. Although this line of reasoning is tempting to a layperson, it is too superficial. Without expert testimony, the plaintiff cannot establish causation and no reasonable jury could return a verdict in her favor. Because the plaintiff has failed to put forward even a scintilla of evidence on causation, she cannot survive summary judgment.

### IV.     Conclusion

Defendants' Motion [ECF No. 109] is **GRANTED.** Because I have determined that summary judgment would be appropriate even if the plaintiff has the benefit of Dr. Nichols' testimony, I need not consider Defendants' Motions to exclude Dr. Nichols' reports and opinions [ECF Nos. 104 and 112]. Accordingly, those Motions are **DENIED AS MOOT**. In addition, the plaintiff's earlier Motion to Compel a Ruling [ECF No. 83] on Defendants' summary judgment motions is **DENIED AS MOOT.** Further, because this opinion disposes of the plaintiff's only remaining claim, the Clerk is directed to **CLOSE** this case and remove it from the court's active docket.

The Clerk is directed to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:  October 2, 2020

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE